# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EUGENE KATZ, Individually And On Behalf Of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| WEST CORPORATION, THOMAS B. BARKER, LEE ADREAN, DONALD M. CASEY, ANTHONY J. DINOVI, PAUL R. GARCIA, LAURA GRATTAN, JEANETTE HORAN, MICHAEL A. HUBER, DIANE E. OFFEREINS, and GREGORY T. SLOMA, | **JURY TRIAL DEMAND** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Eugene Katz ("Plaintiff"), by and through his undersigned counsel, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of West Corporation ("West" or the "Company") against West and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between West and affiliates of certain funds managed by affiliates of Apollo Global Management, LLC ("Parent") and Olympus Merger Sub, Inc. ("Merger Sub," and together with Parent, "Apollo"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1. On May 9, 2017, West and Apollo jointly announced that it had reached a definitive Agreement and Plan of Merger (the "Merger Agreement") where Apollo would acquire West for $23.50 per share (the "Merger Consideration"), representing a transaction value of approximately $5.1 billion.

2. Defendants have violated the above-referenced Sections of the Exchange Act by filing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") filed with the SEC on June 27, 2017. The Board recommends that West stockholders vote in favor of approving the Proposed Merger at the forthcoming stockholder special meeting, to be held on July 26, 2017, and agree to exchange their stock pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and the opinion rendered by the Company's financial advisor, Centerview Partners LLC ("Centerview").

3. The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Merger are fundamentally unfair to West's public stockholders in view of the Company's recent financial success and prospects for future growth.

4. To ensure the success of the Proposed Merger, the Board issued the Proxy, which fails to provide stockholders with all material information necessary for them to assess the fairness of the Merger Consideration. In particular, the Proxy fails to disclose: (1) certain material projections for West, including a reconciliation of the non-GAAP (generally accepted accounting principles) projections to the most directly comparable GAAP measures and the line items used to calculate the non-GAAP measures, and (2) a fair summary of the financial analyses performed by Centerview.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from proceeding with the tentative stockholder vote on the Proposed Merger, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

6. Thus, it is imperative that the relief requested herein be granted prior to special meeting on July 26, 2017 to ensure that West's stockholders can make an informed decision on how to vote their stock regarding the Proposed Merger.

**PARTIES**

7. Plaintiff is, and has been at all relevant times, a holder of West common stock.

8. Defendant West is a Delaware corporation, with its principal executive offices located at 11808 Miracle Hills Drive, Omaha, Nebraska 68154. West offers technology-drive communication services. West is listed on the NASDAQ under the ticker symbol "WSTC".

9. Individual Defendant Thomas B. Barker has served as a director of West since 1997 and is currently the Chairman of the Board and Chief Executive Officer ("CEO").

10. Individual Defendant Lee Adrean has served as a director of the Company since March 2014.

11. Individual Defendant Donald M. Casey has served as a director of the Company since December 2015.

12. Individual Defendant Anthony J. DiNovi has served as a director of the Company since 2006.

13. Individual Defendant Paul R. Garcia has served as a director of the Company since March 2013.

14. Individual Defendant Laura Grattan has served as a director of the Company since October 2012.

15. Individual Defendant Jeanette Horan has served as a director of the Company since April 2016.

16. Individual Defendant Michael A. Huber has served as a director of the Company since January 2014.

17. Individual Defendant Diane E. Offereins has served as a director of the Company since July 2015.

18. Individual Defendant Gregory T. Sloma has served as a director of the Company since March 2013.

19. The Board and West may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21. Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue had an effect in this District.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public stockholders of West (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of June 26, 2017, there were approximately 85,154,029 issued and outstanding shares of West common stock. All members of the Class may be identified from records maintained by West or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act and SEC Rules and Regulations including Rule 14a-9; (ii) whether the Director Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the false and/or misleading Proxy.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, Plaintiff have the same interests as the other members of the Class, and

5

Plaintiff do not have any interests that are adverse to the Class. Accordingly, Plaintiff is adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

30. Founded in 1986, West is a technology-driven communication services provider headquartered in Omaha, Nebraska. West offers it services, including conferencing and collaboration, unified communications, alerts and notifications, emergency communications, business process outsourcing and telephony/interconnect services, around the globe.

31. On February 1, 2017, the Company announced "*Record Cash Flows from Operations*" for the 2016 fiscal year and provided positive guidance for 2017. In doing so, CEO Barker stated: "West Corporation finished the year with a fourth quarter that was stronger than we expected. Our consolidated revenue was down slightly primarily due to a decline in conferencing revenue. However, our four growth businesses (UCaaS, Safety Services, Interactive Services and Specialized Agent Services) grew 5.5 percent on an organic basis in the fourth quarter. Additionally, we had double-digit growth in free cash flow in the fourth quarter and full

6

year. During the fourth quarter we also made changes to our cost structure that we expect to positively impact our results in 2017 and further strengthen West for the future."

32. Notwithstanding West's future growth potential, West issued a press release announcing the Proposed Merger with Apollo on May 9, 2017

> West Corporation (Nasdaq: WSTC) (the "Company" or "West"), a global provider of communication and network infrastructure services, today announced it has entered into a definitive agreement with affiliates of certain funds managed by affiliates of Apollo Global Management, LLC (the "Apollo funds") (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo funds will acquire all of the outstanding shares of West common stock for $23.50 per share in cash.
>
> The purchase price represents a premium of approximately 17.5 percent over West's closing stock price on November 1, 2016, the last trading day prior to the announcement that the Company initiated a process to explore strategic and financial alternatives. The proposed transaction has an enterprise value of approximately $5.1 billion, including net debt.
>
> The West Board of Directors has unanimously approved the agreement with the Apollo funds and recommends that West stockholders vote in favor of the proposed transaction. Certain West stockholders, including Thomas H. Lee Partners, L.P., Quadrangle Group LLC, Gary L. West and Mary E. West, who in the aggregate beneficially own approximately 45 percent of West's outstanding common stock, have committed to vote in favor of the proposed transaction, subject to certain customary conditions, at a special meeting of West stockholders.
>
> "We are pleased to reach this agreement with the Apollo funds, which follows a comprehensive review of alternatives initiated by West's Board of Directors in November," said Tom Barker, Chairman and Chief Executive Officer of West. "We believe this transaction achieves our goal of maximizing value for West stockholders and positions the Company for continued success. Apollo values our team, assets and vision for the future. We look forward to working closely with Apollo as we continue to grow and strengthen our business."
>
> Mr. Barker continued, "We began this process with the acknowledgement of the disparate trends in our various businesses. Over the past six months, we have evaluated a wide range of strategic and financial alternatives, including the sale or separation of assets; various balance sheet options; as well as continuing to operate under our current structure. We believe strongly that the transaction we are announcing today is the best outcome for our stockholders, employees and customers."

"We are extremely excited for our funds to acquire West," said Matthew Nord, Senior Partner at Apollo. "West is the leader in global conferencing and collaboration services, and is well-positioned to capitalize on customer migration to cloud-based solutions and continue to grow its Safety Services, Interactive Services and Health Advocate Solutions businesses. We look forward to working with West's talented and dedicated team to continue the strong heritage of providing the highest-level of service and care to its customers."

33. In sum, it appears that West is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's stockholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**The Incomplete and Materially Misleading Proxy**

34. On June 27, 2017, Defendants filed the materially incomplete and misleading Proxy with the SEC. The information contained in the Proxy has been disseminated to West's stockholders to solicit their vote in favor of the Proposed Merger. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

35. Specifically, the Proxy discloses that West's management developed three sets of financial projections, a set from July 2016 (the "July 2016 Projections"), a set from November 2016 (the "November 2016 Projections") and a set from January 2017 (the "2017 Projections") (collectively, the "West Projections"). Proxy at 45-46.

8

36. First, the Proxy fails to adequately explain the differences, including the inputs and assumptions, between the three sets despite disclosing that three sets of projections were developed and considered during the sale process.

37. Second, the Proxy indicates that the projections include non-GAAP financial measures including Adjusted EBITDA, but fails to reconcile this non-GAAP metric to its most comparable GAAP metric as required by federal law. Proxy at 48. Although Adjusted EBITDA is defined, the Proxy fails to disclose the financial metrics and line items used in calculating Adjusted EBITDA, including: (i) earnings before interest expense, (ii) stock-based compensation, (iii) income taxes, (iv) depreciation and amortization and (v) non-recurring items (gain on sale of buildings, significant restructuring costs and transaction costs)

38. Moreover, Centerview based its calculation of unlevered free cash flows on the West Projections. Despite this reliance, the Proxy defines unlevered free cash flows by referencing several undisclosed financial metrics and line items, including (i) unlevered net operating profit after tax, (ii) depreciation and amortization, (iii) capital expenditures and (iv) changes in net working capital and (v) stock-based compensation expense. Moreover, the Proxy fails to reconcile unlevered free cash flows to its most comparable GAAP metric. Stockholders must be informed as to their specific differences (e.g. stock-based compensation) between the non-GAAP metrics disclosed and utilized by the Board and Centerview. The failure to reconcile and explain these differences renders the West Projections in the Proxy false and misleading.

39. When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

40. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with stockholders. The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as the Company has included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

41. Over the past year, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into*

released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

42. In order to make the projections included on page 47-48 of the Proxy not materially complete and not misleading, Defendants must provide a reconciliation table of all disclosed non-GAAP measures to the most comparable GAAP measures. In fact, the Defendants acknowledge the materially incomplete and misleading nature of said non-GAAP measures in the Proxy: "Non-GAAP financial measures, including Adjusted EBITDA and Unlevered Free Cash Flow, have limitations as analytical tools, and you should not consider any non-GAAP financial measure in isolation or as a substitute for analysis of our results as reported under GAAP. Some of these limitations include the omission of certain material costs, such as depreciation, amortization and interest, necessary to operate our business. Other companies, including companies in West's industry, may calculate similarly titled non-GAAP financial measures differently, which reduces their usefulness as a comparative measure." Proxy at 48. Despite disclosing the misleading and materially incomplete nature of non-GAAP financial measures, Defendants fail to reconcile the non-GAAP measures disclosed in the Proxy.

43. The Proxy also fails to provide sufficient information for stockholders to assess the valuation analyses performed by Centerview in support of its fairness opinions.

---

*Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited 03/06/2017).

[3] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. (last visited 03/06/2017)

44. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) a reconciliation of unlevered free cash flows to its most comparable GAAP metric, (ii) the rationale for using an extremely low and narrow range of perpetuity growth rates, 1.0% to 2.0%, which is well below the historical gross domestic product growth rate and historical inflation, and (iii) the Company's net debt as of March 31, 2017. As a result of these omissions, stockholders are unable to assess the veracity of Centerview's discounted cash flow analysis – generally considered the most useful analysis – in deciding whether or not to vote. The omission of such information renders the summary of this valuation analysis and the ranges of implied share price on page 54-55 of the Proxy misleading.

45. With respect to Centerview's *Selected Public Companies Analysis*, the Proxy fails to disclose the mean of observed Enterprise Value/EBITDA multiples. Without this information, stockholders are unable to determine whether the reference multiple ranges selected by Centerview were reasonable (i.e. whether the individual multiples observed were skewed up or down). The omission of this information renders the analysis on page 52 of the Proxy materially misleading.

46. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I
### Claim for Violations of Section 14(a) of the
### Exchange Act Against All Defendants

47. Plaintiff repeats and realleges each allegation set forth herein.

48. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and

13

a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

51.     The omission of information from a Proxy violates Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the West Projections and (ii) the valuation analyses performed by Centerview.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

54.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Centerview reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Centerview as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the West Projections.

56. West is deemed negligent as a result of the Individual Defendants' negligence in preparing, reviewing and filing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

58. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Claims for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59. Plaintiff repeats and realleges each allegation set forth herein.

60. The Individual Defendants acted as controlling persons of West within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the West, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they

had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

61. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

63. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. In the event Defendants consummate the Proposed Merger, awarding damages to Plaintiff and the Class;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 29, 2017

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com

**KINSEY ROWE BECKER & KISTLER, LLP**

s/ David W. Rowe
David W. Rowe – 19155
Robert D. Kinsey, Jr. - 12232
3800 VerMaas Place, Suite 100
Lincoln, NE 68502
(402) 438-1313

Email: jwilson@faruqilaw.com *Counsel for Plaintiff*

*Counsel for Plaintiff*